

Order Entered.

David L. Bissett
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KENNETH DWAYNE LOCKHART, | ) | Case No.: 1:17-bk-00532 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |
| | ) | |
| KENNETH DWAYNE LOCKHART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | AP No.: 1:20-ap-38 |
| | ) | |
| ETHEL MARCIE JACKSON, | ) | |
| WASHINGTON COUNTY, | ) | |
| WASHINGTON COUNTY CSEA, | ) | |
| WEST VIRGINIA BUREAU FOR | ) | |
| CHILD SUPPORT | ) | |
| ENFORCEMENT, and | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

The Internal Revenue Service ("IRS") seeks dismissal of complaint filed by Kenneth Dwayne Lockhart (the "Debtor") for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted. Similarly, the Washington County (Ohio) Child Support Enforcement Agency ("CSEA") seeks summary judgement on behalf of itself and Washington County, Ohio (the "County"). The movants argue that as arms of the federal and state governments, they are entitled to sovereign immunity and the court accordingly lacks adequate subject matter jurisdiction. Also, they argue that the collection activity at issue here involved non-estate property or property otherwise excepted from the automatic stay.

The Debtor argues that under applicable provisions of the Bankruptcy Code, the parties waived sovereign immunity and that their actions constituted a willful violation of the automatic stay for which he is entitled to damages. In support of his argument, he contends that property taken by the defendants was property of the estate which is not subject to an exception from the automatic stay. Further, in Count II of the complaint Debtor asks the court to find defendants in contempt for willfully violating the confirmation order.

For the reasons stated herein, the court will deny the IRS's motion to dismiss for lack of subject matter jurisdiction, but will grant the motion to dismiss for failure to state a claim upon which relief can be granted and CSEA's motion for summary judgment as to Count I. The court will deny the motions as to Count II to allow for further proceedings.

## I. STANDARD OF REVIEW

When adjudicating a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the "court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Evans v. B. F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted); Fed. R. Bank. P. 7012(b). If any factual allegations are in dispute, the court may resolve the factual issues in adjudicating the motion to dismiss. *Wiles v. Wiles*, Nos. 02-21206, 10-123, 2011 Bankr. LEXIS 139 (Bankr. N.D.W. Va. Jan. 19, 2011) (citing *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986)).

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint against it when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). When evaluating a motion to dismiss, the court must (1) construe the complaint in a light favorable to the non-movant, (2) accept the factual allegations in the complaint as true, and (3) draw all reasonable inferences in favor of the plaintiff. 2 *Moore's Federal Practice – Civil* § 12.34 (2018). After undertaking these steps, the claim for relief must be "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining a motion to dismiss, the court is not adjudicating whether a plaintiff will ultimately prevail on the merits of the complaint; it is only determining if the plaintiff is entitled to offer evidence to support the claims. *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which are necessary to establish a cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Further, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Id.* at 249-50. If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

## II. BACKGROUND

Debtor filed Chapter 13 bankruptcy on May 19, 2017, scheduling with his petition, among other debts, his past-due child support then being collected by West Virginia Bureau of Child Services ("WVBCSE").[1] On May 24, 2017, WVBCSE filed its proof of claim, claiming a total amount due of $19,761.14, which the Debtor proposed to pay in full over the course of the 60-month plan. At some point post-confirmation, the child relocated to Washington County, Ohio. The Debtor still resides in West Virginia. Upon the child moving to Ohio, WVBCSE notified CSEA of the Debtor's child support obligation. The Debtor alleges that CSEA subsequently, with knowledge of the Chapter 13 plan and confirmation order, coordinated with the U.S. Department of the Treasury ("Treasury") to intercept a $2,400 economic stimulus payment ("Stimulus") to which Debtor and his spouse were entitled as a result of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").[2] Specifically, the Treasury intercepted the Stimulus on May 22, 2020.[3]

---

[1] This action as it pertains to WVBCSE is addressed in a separate opinion. The IRS and CSEA make substantially the same arguments in their defense and are addressed herein together.

[2] According to the record before the court, the Treasury also offset $1,200 due and payable to Debtor's spouse. To the extent the spouse has not yet recovered that $1,200, they can accomplish it by filing an injured spouse claim. If properly filed, the Treasury must remit these funds in accordance with 42 U.S.C. § 664(a)(3). This dispute involves only the $1,200 to which the Debtor was entitled.

[3] Debtor's original complaint was unclear as to whether this amount was subsequently paid to CSEA or if it is still being held by the IRS. CSEA's motion states that the funds are on hold with the federal government in compliance

On September 18, 2020, Debtor filed this complaint seeking monetary loss among other damages. In Count I, Debtor alleges a violation of the automatic stay. Debtor asks the court to hold the defendants in contempt for violation of the confirmation order in Count II. The same week the Debtor initiated this proceeding, CSEA mailed the Debtor a "Notice of Ohio Income Tax Refund Offset For Overdue Support" ("Notice"). Debtor states this Notice constitutes a separate violation of the stay. The complaint names CSEA and attaches the IRS as an indispensable party, neither of whom were originally parties to the bankruptcy action but have been implicated in this complaint by their alleged conduct.[4] CSEA seeks summary judgment and IRS seeks to dismiss the action.

### III.  DISCUSSION

The IRS and CSEA seek dismissal and summary judgment of the Debtor's adversary complaint. Specifically, they first argue that they, as governmental entities, have sovereign immunity that they have not expressly waived. The defendants further argue that the Stimulus was a "refund" for the purposes of § 362(b)(2)(F) of the Bankruptcy Code such that its interception was excepted from the automatic stay. CSEA also argues that the child support reporting system is automatically administered and, to a certain degree, out of the agency's control. CSEA states that under the "Treasury Offset Program" ("TOP"), arrears are required by law to be submitted to the State and any arrears owed to an obligee (in this case, Ethel Marcie Jackson) are then automatically reported by the state for federal tax offset. Because of this, the motion alleges, any decisions are made by the state of Ohio, not the individual counties or their agencies, and the only determination by the county is the total amount of arrearage.

Debtor counters that the parties are not immune from suit, that the Stimulus was a "credit" subject to the automatic stay, and that Notice from the state of Ohio amounted to an independent attempt to collect which violated the stay.

### A.  IRS and CSEA waived sovereign immunity.

Defendants IRS and CSEA seek a determination that the complaint cannot go forward based upon various bases. Because the defendants are similarly situated, their defenses are

---

with the 42 U.S.C. § 664 six-month holding period. There is no dispute that Debtor and his spouse were otherwise legally entitled to the Stimulus payment.

[4] To be clear, Debtor does not seek relief against IRS and alleges no wrongdoing through their actions. They are attached only as an indispensable party to the complaint against CSEA because the IRS is currently holding the $1,200 and only the IRS can release it.

4

essentially analogous, and the court will discuss them together. Parties argue that as government entities, they have sovereign immunity and are not subject to suit. IRS asserts that the court lacks subject matter jurisdiction over the action and dismissal is required without explicit consent to suit or an instance of waiver. CSEA additionally makes this argument on behalf of the County. IRS cites to *United States v. Nordic Village* in support of its position. 503 U.S. 30 (1980). Lastly, the IRS argues that statutory authority for the offset—26 U.S.C. § 6402—precludes suit against the agency. Debtor argues that Congress abrogated sovereign immunity in this context – prohibited collection done actions taken with knowledge of the Debtor's bankruptcy. The arguments put forth by IRS and CSEA as to sovereign immunity miss the mark.

In 1992, the Supreme Court in *Nordic Village* held that § 106 of the Bankruptcy Code did not establish an unequivocal textual waiver necessary to avoid the government's sovereign immunity in bankruptcy proceedings. 503 U.S. at 33-35. However, § 106 was amended in 1994 to provide for express waiver of sovereign immunity by governmental units in a bankruptcy context relating to monetary recovery, declaratory, and injunctive relief. *Benson v. United States (In re Benson),* 566 B.R. 800 n.3 (Bankr. W.D. Va. 2017). Under the amended § 106, sovereign immunity is abrogated with respect to § 362 of the Bankruptcy Code, among a multitude of other sections. 11 U.S.C. § 106(a).

At least as to states, there is an understanding within the realm of bankruptcy law that the Bankruptcy Clause granted Congress the power to make a limited subrogation of sovereign immunity in order to serve the fundamental purposes which are intertwined with bankruptcy. *Cent. Va. Cmty. College v. Katz*, 546 U.S. 356, 362-63 (2006). As elaborated in *Katz*, the foundation of bankruptcy in the colonies was riddled with the issue of one jurisdiction not acknowledging another's action of discharge. *Id.* at 366-67. The *in rem* nature of bankruptcy generally implicates state interests far less than other kinds of jurisdiction. *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004). With these two considerations in mind, the Bankruptcy Clause was effectuated with the intent "to give Congress the power to redress the rampant injustice resulting from States' refusal to respect one another's discharge orders." *Katz*, 546 U.S. at 377. Without such, the fresh start of bankruptcy would be defeated for any debtor who conducts transactions outside their state of domicile.

Here, it is clear Congress abrogated sovereign immunity by amending § 106 of the Bankruptcy Code. Similarly, the court finds that 26 U.S.C. § 6402 does not proscribe this action.

The abrogation of immunity within § 106(a) acts as a specific waiver with respect to a number of sections within Title 11 of the Bankruptcy Code. Within these applicable sections is the automatic stay provisions of § 362, under which the Debtor brings this adversary proceeding. The court may hear and determine *any* issue arising with respect to the application of such sections to governmental units. § 106(a)(2). Where the IRS and CSEA are governmental units within the meaning of this section, they have effectively waived immunity to which they may otherwise be entitled outside of bankruptcy.

Additionally, this court finds IRS's reliance upon *Nordic Village* to be misplaced. *Nordic Village* has been explicitly superseded by the 1994 amendments to § 106.[5] Through these amendments, Congress has made explicitly clear its intention to "abrogate sovereign immunity from bankruptcy causes of action for both the United States and the states, as to both nonmonetary and monetary judgments, except punitive damages." *In re TWA*, 261 B.R. 103, 114 (Bankr. D. Del. 2001) (citing *Field v. Montgomery County (In re Anton Motors Inc.)*, 177 B.R. 58, 82 (Bankr. D. Md. 1995); *Benson,* 566 B.R. at n.3.

IRS also relies upon § 6402 as a source of sovereign immunity. It contends that § 6402(g) precludes review of this action such that the court must dismiss. Notably, however, its argument in that regard is misplaced. As a general rule,

> the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the party of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f), refund any balance to such person.

26 U.S.C. § 6402(a). Subsection (c) further provides that the amount of any tax overpayment to be refunded is to be "reduced by the amount of any past-due support owed by that person of which the Secretary has been notified by a State in accordance with [past-due support collection requirements]." 26 U.S.C. § 6402(c) (parentheticals omitted).[6] Accordingly, the IRS has the ability

---

[5] Further reliance upon sovereign immunity applications in non-bankruptcy contexts by IRS are irrelevant to this discussion. Bankruptcy sits on a unique plane for reasons herein described and the tax cases upon which IRS relies do not consider these implications, specifically the waiver of sovereign immunity in § 106. *Katz*, 546 U.S. at 373 ("Insofar as orders ancillary to the bankruptcy courts' *in rem* jurisdiction, like orders directing turnover of preferential transfers, implicate States' sovereign immunity from suit, the States agreed in the plan of the Convention not to assert that immunity.").

[6] Cross-reference to 42 U.S.C. § 664 states "past-due support" to mean "delinquency, determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child

to "offset" tax refunds to which an individual is otherwise entitled against past-due support, including child support.

Additionally, "No court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review a reduction authorized by [these subsections]." 26 U.S.C. § 6402(g). However, the section "explicitly reserves plaintiff's ability to sue agency-claimants directly, but it prohibits suits against the [Department of Treasury] merely for carrying out its statutory obligation to collect debts that agencies refer to it." *Addison v. U.S. Dep't of Agric. (In re Addison)*, 533 B.R. 520, 524 (Bankr. W.D. Va. 2015) (citing *Dasisa v. Dep't of Treasury*, 951 F. Supp. 2d 45, 46 (D.D.C. 2013); 26 U.S.C. § 6402(g). Thus, suit against the Treasury is precluded by this statute, but IRS's reliance upon it to protect itself from suit is misplaced.

Here, the court finds the foregoing to only preclude an action against the Treasury, not the IRS. The Treasury is a federal department, whereas the IRS is one of the many agencies operating underneath it. The court therefore finds that § 6402 does not preclude subject matter jurisdiction because this suit is not one directly against the Treasury. Although the complaint alleges coordination between CSEA and the Treasury, the Treasury is not a party to this action and accordingly the mere fact that the offset falls within § 6402(a) does not preclude the jurisdiction of this court to hear challenges to those collection efforts, specifically where they allegedly violate the automatic stay.

Based upon the foregoing, there is no jurisdictional impediment preventing the court's consideration of this action.

**B.    The record requires further development for a ruling on contempt.**

Because the parties devote the majority of their pleadings to Count I, the court finds it necessary to dispose of the motions as to Count II before discussing the merits pertaining to the automatic stay. Debtor argues that the defendants are in contempt by intercepting the funds rather than waiting for payments as detailed in the plan. CSEA counters that it is not bound by the

---

(whether or not a minor), or of a child (whether or not a minor) and the parent with whom the child (whether or not a minor) is living. §664(c).

7

confirmation order or, in the alternative, that the Stimulus was not property of the bankruptcy estate.

Contempt is a violation of the confirmation order that the court may remedy pursuant to § 105 of the Bankruptcy Code. *In re Walters*, 868 F.2d 665, 669 (4th Cir. 1989). In order for the court to hold a defendant in contempt, the movant must show by clear and convincing evidence:

> (1) [T]he existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*United States v. Under Seal (In re Grand Jury Subpoena)*, 597 F.3d 189, 202 (4th Cir. 2010) (quoting *Ashcraft v. Conoco, Inc.,* 218 F.3d 288, 301 (4th Cir. 2000)); *see Fla. Dep't of Revenue v. Rodriguez (In re Rodriguez)*, 367 Fed. Appx. 25, 28 (11th Cir. 2010) (holding state of Florida in contempt for violating the terms of debtor's confirmed plan, even when the collection did not violate the automatic stay because of the child support exception). The confirmed bankruptcy plan binds the debtor and each creditor to its terms, whether or not the creditor is provided for in the plan and regardless of whether the creditor has objected to, accepted, or rejected the plan. 11 U.S.C. § 1327(a).

Defendants do not dispute that the confirmation order was validly entered, but the examination includes several factual matters that are unresolved. First, seemingly neither CSEA nor IRS had constructive knowledge of Debtor's case because they are not parties to the case. Regarding actual knowledge, CSEA concedes it was aware of the bankruptcy, but its concession does not explicitly include whether it knew of the specific terms of the court's confirmation order. Debtor alleges that CSEA had actual knowledge of the plan, but CSEA fails to address the matter expressly in its pleadings. IRS cites the exact date the confirmation order was entered within its motion, but there is not a conclusive concession or rejection that either defendant was aware of the plan at the time of the alleged actions taken. It appears quite clear to the court that the parties had some degree of awareness of the Debtor's bankruptcy, but the extent is not clear and not sufficiently determined by the pleadings. As set forth above, actual or constructive knowledge is material.

The court finds the foregoing sufficient to deny CSEA's and IRS's motions, but it would be remiss if it did not also note that the Debtor himself was not following the terms of the plan.[7] In any event, it is clear to the court there are still factual matters in dispute precluding summary judgement or dismissal as to Count II. Accordingly, the court will deny defendants' motions as to Count II and order further proceedings on the issue of contempt.

    **C.**    **The Stimulus payment is a tax refund and is excepted from the automatic stay under 11 U.S.C. § 362(b)(2)(F).**

Critical to the parties' dispute is whether the Stimulus is a tax refund or credit. IRS and CSEA contend that the Debtor's claim fails because the Stimulus is an advance refund subject to exception from the automatic stay. To support this position, they cite Treasury and IRS guidance. CSEA additionally argues that the Debtor suffered no actual harm, because the interception resulted in a dollar-for-dollar reduction in the Debtor's arrearage in support payments. The Debtor cites language within 26 U.S.C. § 6428 to attempt to classify the payment as a credit rather than a refund. As a credit, he claims the exception in § 362(b)(2)(F) is inoperable. He supports this proposition by baldly claiming that the automatic stay and the confirmation order supersede the CARES Act and Treasury Offset Program ("TOP") statutory authority.[8]

Section 362 of the Bankruptcy Code is effective upon petition filing and operates as a breathing spell from collection attempts. The stay is automatic and applicable to all entities to stay all collection actions outside of the bankruptcy forum. *City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021). However, it comes with a plethora of exceptions. Section 362(b)(2)(F) is one such exception, providing for non-applicability of the stay for the interception of a tax refund. Few courts have analyzed this provision, but the court in *In re Dougherty-Kelsay* held generally that neither the interception of a refund for a child support arrearage, nor the retention of those funds

---

[7] Upon review of the docket, it is apparent the Debtor has only intermittingly performed, having twice resolved motions by the Chapter 13 Trustee to dismiss for failure to maintain plan payments. Also, CSEA asserts that contrary to the terms of the plan, Debtor was $1,699.03 in arrears in child support payments as of April 2021.

[8] The parties additionally argue over whether the refund is property of the estate. Based on this court's disposition, this argument is immaterial because the Stimulus is excepted from the automatic stay for reasons stated herein.

constituted a violation of the automatic stay. 601 B.R. 426, 444 (Bankr. E.D. Ky. 2019).[9] That, of course, was before COVID-19 and did not involve a stimulus payment.

Importantly, the exception in § 362(b)(2)(F) applies only to refunds. Tax credits, which are dollar-for-dollar reductions in owed taxes, are distinctly different from refunds because they are applied before the calculation of a refund. Only if the application of credits results in overpayment of taxes will there be a refund subject to offset under TOP. The statutory framework for TOP explicitly states "the amount of any *overpayment* to be refunded to the person shall be reduced by the amount of any past-due support . . . ." 11 U.S.C. § 6402 (emphasis added). This overpayment would result *after* application of any credits. Accordingly, TOP intercepts the resulting refund, not any tax credit applied to calculate the refund.

Regarding whether the Stimulus qualifies as a refund, the Treasury website indicates "[t]he amount you receive for the Recovery Rebate Credit will be included as part of your *refund* or applied to any tax owed. *If you owe debts to the United States or certain state agencies, your tax refund may be reduced to pay those debts*." (emphasis added).[10] More specifically, the IRS website explicitly states "Your [Economic Impact] Payment will be offset if you owe past-due child support." *Butler v. CHFS*, No. CV 6:20-234-WOB, 2020 WL 7322717 at *2 (E.D. Ky. Dec. 11, 2020).[11]

Additionally, several non-bankruptcy courts have recently ruled that an offset in similar circumstances was valid where a father owing child support contested the interception of their stimulus payment.

> By its terms, the CARES Act, Pub. L. 116-136 (Mar. 27, 2020), expressly provides that the "economic impact payment" of $1,200.00 per person cannot be offset

---

[9] The court in reading the plain language of the subsection further opined that "[u]nlike other stay exceptions, § 362(b)(2)(F) does not limit its applicability to non-estate property." *In re Doughtery-Kelsay*, 601 B.R. at 444. Additional unpublished authority has come to the same conclusion. *See Chapter 7 Tr. v. Texas (In re Good)*, 2013 Bankr. LEXIS 3867 (Bankr. E.D. Tex. Sep. 17, 2013) (Granting summary judgement for Texas in action alleging a violation of the automatic stay when the state intercepted debtor's federal tax refund to pay delinquent, post-petition child support obligations); *In re Wills*, 2009 Bankr. LEXIS 2311 (Bankr. D. Neb. Aug. 11, 2009) (Debtor's motion for return of seized tax return to pay delinquent domestic support denied under § 362(b)(2)(F)).

[10] https://fiscal.treasury.gov/top/faqs-for-the-public-covid-19.html ("The Economic Impact Payment under the CARES Act can be offset through TOP only to collect delinquent child support obligations that have been referred by the state to TOP.").

[11] *See* https://www.irs.gov/newroom/questions-and-answers-about-the-first-economic-impact-payment-topic-d-receiving-my-payment.

> against the kinds of debts expressly identified in Section 2201(d)(1) to (d)(3) of the Act. However, *child support obligations are not one of the debts excepted from setoff.* Accordingly, the stimulus payment can be garnished to pay past-due child support pursuant to Section 464 of the Social Security Act and Section 6402(c) of the Internal Revenue Code.

*Treadwell v. Mnunchin*, No. 2:21-CV-1028, 2021 WL 1734338 at *3 (S.D. Ohio May 3, 2021) (emphasis added); *see Butler,* 2020 WL 7322717 at *1; *Ortiz-Rivas v. Mnunchin*, No. 20-CV-1844-pp, 2021 WL 1400931 at *4 (E.D. Wis. Apr. 14, 2021), *appeal docketed*, No. 21-1887 (7th Cir. May 18, 2021). In the cases cited above, state inmates filed suit when CARES Act payments they were otherwise entitled to were intercepted and applied to their delinquent child support debt. All suits were dismissed, with the *Butler* court explicitly holding the Stimulus could be garnished to pay past-due child support under § 6402(c) and dismissing with prejudice.

Debtor's reliance on the use of "advance credit" in 26 U.S.C. § 6428 terminology as an "advance credit" to support his position is misplaced. Not only does the same section also use the terms "advance refund" and "advance refunds of credit," but the effective result of the section is the equivalent of a $1200 (or $2,400 for joint filers) overpayment. An overpayment results in a refund, which is subject to TOP interception. Accordingly, although the payments in question have just recently arose as a response to the pandemic and their treatment may be questioned, this court finds that the interception of these payments in accordance with TOP was plainly valid.

While the federal agencies in charge of administering the payments appear to use "credit" and "refund" interchangeably, there is explicit language indicating that it was subject to federal offset for child support arrearages. Because the CARES Act and the Treasury website explicitly state that the payment is subject to offset for child support owed, and consistent with the non-bankruptcy authority above, it follows that the Stimulus is more appropriately characterized as a refund. The Debtor points to no authority which would support an argument that the plain language of the § 362(b)(2)(F) exception does not mean what it says—that the stay does not operate as to "the interception of a tax refund"—and that the Stimulus qualifies as a refund. As a refund, § 362(b)(2)(F) excepts the interception from the automatic stay.

### D. Notice received from the state of Ohio did not constitute a violation of the automatic stay.

Finally, Debtor contends that even if the interception of his Stimulus did not violate the automatic stay, CSEA's Notice, which he received the same week he filed this complaint,

11

constitutes a violation on its own. In support of this position, Debtor makes comparison to the facts in *Flint v. West Virginia State Tax Dep't*, 557 B.R. 461 (Bankr. N.D. W. Va. 2016). CSEA responds that while the Notice lists CSEA as the return address, it was sent directly by the state of Ohio, as required by 42 U.S.C. § 666(a)(3)(A).

A creditor which provides notice that has an informative purpose, rather than one amounting to an attempt to collect, does not violate the automatic stay. *See In re Crespo Torres*, 532 B.R. 195, 202 (Bankr. D. P.R. 2015) (letter notifying the debtor that account had been sold and payments should be directed to new account holder did not violate the stay); *In re Sciortino*, 561 B.R. 569, 579 (Bankr. N.D. Ga. 2016) (mailing a letter with no language indicating adverse consequences in event of nonpayment and provided for an informational purpose does not violate the stay). 42 U.S.C. § 666(a)(3)(A) provides that a state shall ensure notice of an offset is sent to the noncustodial parent to ensure they are given an ability to contest it.

Debtor's reliance upon *Flint* is misplaced for two reasons. First, the debtors had already received discharge, and the case dealt with a collection attempt of discharged debts, rather than a violation of the automatic stay. *Id.* at 465. Second, a violation was found based on the language in a mailed "Statement of Account" which made reference to "interest and penalties," stated that "[p]ayment must be made on or before the Pay By Date or additional penalties will continue to accrue," and included a statement that the notice constituted a "lien upon all property of the taxpayer." *Id.* at 464. This language far exceeds that of the Notice sent by CSEA (or the state of Ohio on behalf of CSEA) notifying Debtor that his owed child support was subject to interception of his Ohio income tax refund and that this decision was subject to review.[12]

The facts here indicate an informative, rather than harassing purpose, and fail to amount to a violation of the stay. The closest thing to harassing language within the Notice is the statement "if you miss any further payments which add to your support debt, these amounts will also be subject to similar Ohio income tax intercepts." This language reminds the Debtor of his duty to pay, but does not amount to a collection attempt. Nor does it provide any true threat for payment, as Debtor is a West Virginia resident and is not entitled to an Ohio tax refund. Rather, the Notice is the result of the state of Ohio complying with § 666(a)(3)(A) and ensuring that the Debtor had

---

[12] Debtor concedes that as a West Virginia resident he is not entitled to an Ohio income tax refund.

adequate notice of the offset. This court finds within the Notice no harassing language which indicates an attempt to collect that would render it a violation of the automatic stay.

### IV. CONCLUSION

For the foregoing reasons, the court finds it appropriate to find in favor of movants on Count I and in favor of the Debtor on Count II. The court will deny IRS's motion to dismiss for lack of subject matter jurisdiction, but consistent with Fed. R. Civ. P. 58, made applicable by Fed. R. Bankr. P. 7058, the court will enter separate orders granting the IRS's motion to dismiss for failure to state a claim upon which relief can be granted and CSEA's motion for summary judgment as to Count I. Defendants' motions as to the contempt claims of Count II are denied and the court will set further proceedings on the matter.